**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**TAMMY TUCKER,**

     **Plaintiff,**

**vs.**                                    **CIVIL ACTION NO. 5:21-CV-00148**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

     **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered March 9, 2021 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Plaintiff's Motion for Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 10, 15)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for remand (ECF No. 10); **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 15); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Tammy Tucker, (hereinafter referred to as "Claimant"), protectively filed her application for benefits on November 19, 2018 (Tr. at 288-292) alleging disability since September 6, 2018 because of severe urogenital pain and bladder dysfunction, chronic and severe low back pain, chronic hip and pelvic pain, pain in hands and right shoulder due to arthritis, chronic fatigue, anxiety, depression, a vitamin B-12 deficiency, anemia, and a hematological disorder (Tr. at 381). Her claim was initially denied on April 25, 2019 (Tr. at 138, 126-137) and again upon reconsideration on June 11, 2019 (Tr. at 139, 140-153). Thereafter, Claimant filed a written request for hearing on August 9, 2019 (Tr. at 176-177).

An administrative hearing was held on April 27, 2020 before the Honorable Valerie Bawolek, Administrative Law Judge ("ALJ"). (Tr. at 96-11) However, because the hearing recording stopped abruptly and the expert testimony had extremely poor sound quality, a supplemental hearing was held on October 14, 2020 (Tr. at 35-83). On November 3, 2020, the ALJ entered an unfavorable decision. (Tr. at 16-34) On November 13, 2020, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 285-287) The ALJ's decision became the final decision of the Commissioner on January 12, 2021 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-7)

On March 3, 2021, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 7, 8) Subsequently, Claimant filed a Brief in Support of Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10), in response, the Commissioner filed a Brief in

Support of Defendant's Decision (ECF No. 15). Consequently, this matter is fully briefed and ready for resolution.

## Claimant's Background

Claimant was 57 years old as of the alleged onset date and defined as a "person of advanced age" throughout the underlying proceedings. See 20 C.F.R. § 404.1563(e). (Tr. at 53) Claimant completed two years of college and did not require special education. (Tr. at 382) Claimant last worked in September 2016 as an office manager. (Tr. at 383)

## Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant

work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c). This Section provides as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such

factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the

technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this case, the ALJ found Claimant met the insured status requirements through March 31, 2023. (Tr. at 21, Finding No. 1) At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of September 6, 2018. (Id., Finding No. 2) At the second inquiry, the ALJ found that Claimant had the following severe impairments: lumbar degenerative disc disease and osteoarthritis. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 24, Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work "except she can frequently climb ramps and stairs, balance, stoop, crouch, kneel, and crawl, but can never climb ladders, ropes of scaffolds. She can tolerate occasional exposure to extreme cold and vibration." (Tr. at 25, Finding No. 5) At step four, the ALJ found Claimant was capable of performing her past relevant work as a teller, a customer service representative, a loan officer, an office manager/recreation manager, and an office manager for medical clinic/administrative clerk. (Tr. at 27, Finding No. 6) Finally, the ALJ determined Claimant had not been under a disability since September 6, 2018. (Tr. at 28, Finding No. 7)

## Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ erred in the RFC assessment because she failed to properly

evaluate the medical opinion evidence concerning her mental impairments leading to an erroneous finding that she had no more than mild limitations in any of the broad functional areas. (ECF No. 10)

In response, the Commissioner asserts that the ALJ appropriately considered the opinion evidence related to her mental impairments, and that the medical evidence substantially supported her finding that her mental impairments were not severe impairments (ECF No. 15).

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

Psychological Evaluation Report:

On April 23, 2019, Claimant underwent a psychological evaluation by Kelly Robinson, M.A. (Tr. at 732-736) Claimant reported a depressed mood, an increase in appetite, problems sleeping, a diminished interest in activities, low self-esteem, problems focusing, crying spells and fatigue. (Tr. at 732) She reported a depressed mood seven days a week. (Id.) She reported a decline from her previous level of functioning and described her current mood as "I got nervous over coming to do this." (Id.) She reported similar problems for almost two years and the problems had gotten worse over time. (Id.)

She stated she "always" had problems with anxiety, and reported feelings of nervousness, irritability, restlessness, problems sleeping, problems focusing and abdominal distress; she stated that her problems have gotten worse over time, but attributed the onset to "I think it's just situational." (Tr. at 733) She reported being prescribed Ativan by her family physician, which

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

helps her sleep when she goes to bed. (Tr. at 732-733) She reported no mental health treatment. (Tr. at 733)

On examination, Claimant's mood was depressed and her affect broad and reactive. (Tr. at 734) Her thought processes were logical and coherent; her thought content showed no indication of delusions, obsessive thoughts or compulsive behaviors; she had no unusual perceptual experiences; her insight and judgment were normal; her immediate, recent, and remote memory were all normal; her concentration was normal. (Tr. at 734-735)

Ms. Robinson's diagnostic impression was reported as "Major Depressive Disorder, Recurrent, Moderate and Other Anxiety Disorder." (Tr. at 735) She noted Claimant does not meet the criteria for a specific anxiety disorder due to lack of symptoms. (Id.) Claimant's attention/concentration, persistence, and pace were within normal limits. (Tr. at 736) Regarding her social functioning, Ms. Robinson noted Claimant presented in a depressed mood and cried openly during the interview when she described her problems, however, Claimant maintained good eye contact, and stated she had a good relationship with her husband and has regular contact with her friend. (Id.)

State Agency Psychological Consultants Opinions:

On April 25, 2019, at the initial level of review, G. David Allen, Ph.D., reviewed the record, including Ms. Robinson's consultative report, and concluded that functionally, Claimant remained intact with regard to key capacities. (Tr. at 134) Dr. Allen opined Claimant was not limited in the areas of understanding, remembering, or applying information; was mildly limited in the areas of interacting with others and in concentrating, persisting, or maintaining pace; and not limited in adapting or managing oneself. (Id.) Dr. Allen concluded that Claimant's mental impairments did

not prevent her from engaging in work-like activities. (Id.) On June 8, 2019, at the reconsideration level of review, Jeff Harlow, Ph.D., reviewed the updated record and affirmed Dr. Allen's administrative finding. (Tr. at 150-151)

Mental Health Treatment Records:

For several years, Claimant received mental health treatment from her primary care provider, Ralph Simms, D.O., having been prescribed Ativan and Effexor for anxiety and recurrent depression. (Tr. at 758-777) On September 24, 2019, Claimant began psychiatric treatment with Shilpa Sammeta, M.D. (Tr. at 944-948) She reported worsening symptoms of anxiety, mood changes, and chronic pain from multiple pelvic floor surgeries. (Tr. at 945) On examination, Claimant was cooperative, comfortable, and in no acute distress. (Tr. at 946) She was alert and oriented times three (Id.) and her appearance and mental status were normal (Tr. at 945). She had an anxious mood and affect, with normal thought process and normal thought content; judgment and insight were good. (Tr. at 946-947) She was diagnosed with generalized anxiety disorder with panic attacks and major depressive disorder, single episode, unspecified. (Tr. at 947-948) Dr. Sammeta increased Claimant's Effexor to 75 mg per day and continued Ativan 1mg, three times per day and referred her for individual psychotherapy. (Tr. at 947)

In a follow up examination in December 2019, Claimant complained of persistent symptoms of anxiety and discussed upcoming vacation plans with Dr. Sammeta. (Tr. at 950) Claimant's exam remained the same, normal except for anxious mood and affect, and she was continued on her medications (Id.), she was also advised to continue therapy (Tr. at 951).

On March 10, 2020, Claimant reported an increase in anxiety relating to the health of her children. (Tr. at 954) She denied panic attacks and stated that she has had to take Ativan

intermittently, and mostly at night to help with her sleep. (Id.) She reported depressed mood, decreased sleep, difficulty falling asleep, decreased energy level, feelings of guilt, worthlessness and hopelessness, decreased concentration and decreased psychomotor activity. (Tr. at 955) Mental status exam was normal except for dysthymic mood and anxious affect. (Tr. at 956) Dr. Sammeta increased Effexor to 150 mg per day; advised to continue Ativan 1 mg 3 times per day and to take medications as prescribed as well as to continue individualized psychotherapy. (Id.) Dr. Sammeta noted that Claimant has worsening symptoms of depression and should be monitored closely, and the gene site testing would be obtained. (Tr. at 957)

On April 21, 2020, regarding her anxiety, Claimant reported doing well and had been taking medications as prescribed with no side effects. (Tr. at 959) She stated that she was worried about being infected by the coronavirus; she was also worried about her husband's health. (Id.) She reported worsening anxiety, but denied problems with sleep and appetite. (Id.) Regarding her depression, Claimant reported low motivation and stated that she had several bad days where she was very emotional; she was teary and felt like her life had changed; she had not been taking care of herself; she had been dealing with anhedonia. (Tr. at 960) The chief complaint was reported as depressed mood: she did not enjoy normal activities; her mood was down; she felt depressed and hopeless; her sleep was decreased, and she had difficulty falling asleep; her energy level was decreased; she had feelings of guilt, worthlessness or hopelessness; decreased concentration; and decreased psychomotor activities. (Id.) Dr. Sammeta concluded that Claimant was suffering from symptoms of worsening depression, the gene site testing results were reviewed. (Tr. at 962) Effexor was decreased from 150 mg to 75 mg per day, and Wellbutrin 150 mg per day was added for depression. (Id.) She was advised to continue with social distancing and maintain good hygiene

as well as to do as much physical activity as possible. (Id.)

On May 19, 2020, Claimant had a follow up with Dr. Sammeta (Tr. at 987-992). Regarding her depression, Claimant reported an improvement in mood that week. (Tr. at 988) She had been tapering herself off the Effexor, which she believed made her "mean"; she reported doing well, taking her medications as prescribed and denied side effects. (Id.) She denied problems with sleep and appetite. (Id.) Her mood was noted to be congruent and her affect normal. (Tr. at 990) Claimant noticed a slight improvement but continued to deal with anhedonia and fatigue and several social stressors. (Tr. at 991) Wellbutrin was increased to 300 mg per day and Effexor was discontinued; she was continuing Ativan 1 mg 3 times per day. (Id.)

On August 4, 2020, Claimant again reported an improvement in mood, taking her medications as prescribed and denied side effects. (Tr. at 994) She denied problems with sleep or appetite, with no significant change in anxiety and coping well with changes. (Id.) She reported she had discontinued Effexor altogether as well as Wellbutrin 300 mg because it made her feel "different." (Id.) Her mood was again noted to be congruent and her affect normal. (Tr. at 995) She stated the Wellbutrin 150 mg has been helping her, though she reported continued anhedonia and fatigue intermittently. (Tr. at 994, 996) Dr. Sammeta noted Claimant was "more positive." (Tr. at 996)

**The Administrative Hearing**[2]

Claimant Testimony:

Claimant testified that she has panic attacks, for which she takes lorazepam; she said her panic attacks as coming out of nowhere, making it "very hard to get out to do anything." (Tr. at

---

[2] Because Claimant's appeal relates solely to her mental impairments, the undersigned focuses on the testimonies related to that evidence.

58) If she has a panic attack while driving, she will pull over beside the road. (Id.) She described the feeling like having a heart attack. (Id.) Sometimes she will have a week without panic attacks, and other times, she can have a few in a day. (Tr. at 59) She testified that she gets them when she is nervous, or if she's hurting really bad, and when she has a task she must do; she stated they control her but will just have to learn to carry on a normal life. (Id.)

Claimant also has depression since she feels she is unable to do what she had done her whole life; she feels useless and cries a lot. (Id.) She said her depression affects her ability to concentrate mostly; she has a negative attitude. (Tr. at 60) She testified that she is under the care of Dr. Senetta, and that she is on medication that have "helped some", though it makes her sleepy. (Id.) She stated the drowsiness lasts about a couple of hours after she takes her psychotropic medications. (Tr. at 61)

Paul R. Wiese, Ph.D., Medical Expert Testimony:

Dr. Wiese determined that the record established Claimant had anxiety, that "may not meet the B criteria", but "it does lend towards pushing the concentration, at least a moderate level, occasionally marked." (Tr. at 67) Dr. Wiese testified that the record showed "the presence also of the generalized anxiety with occasional panic symptoms. I think those equal listing under the C criteria, because as early as February 2019 we see [] severe anxiety. But there's occasional improvement in that." (Id.) In response to questioning by the ALJ, Dr. Wiese noted that the record showed Claimant had reported severe anxiety on February 26, 2019, and that subsequent reports showed normal mental status examinations (Tr. at 68-69). He also noted that treatment records in Exhibit 27F showed Claimant was doing well on Effexor, but had worsening anxiety, and testified that he did "not know how they conclude" that, however, he determined the anxiety is

12

"circumstantial" and "contextual" and "not the majority of what's going on." (Tr. at 69) From the evidence, Dr. Wiese opined, "So, it's unlikely that it would be consistent enough to meet even a C criteria." (Id.)

In terms of Claimant's diagnoses, Dr. Wiese testified that the treatment records show Claimant has major depression, moderate, and unspecified anxiety disorder – he explained the "unspecified" qualifier that anxiety can occur across the spectrum of circumstances, that it does not have to be severe in nature, and may be circumstantial. (Tr. at 69-70) Dr. Wiese further elaborated that Exhibit 23F describes "persistent anxiety, but it's not anxiety about everything. So, it's anxiety that does occur, anxiety that's there from time to time, and . . . some of the medications seems to help . . . the Ativan seems to. Sometimes the Effexor will kick off anxiety in some folks." (Tr. at 70) Regarding the B criteria, Dr. Wiese testified that Claimant's abilities in acquiring and using information was mildly limited; interacting with others "has been moderately limited, same period of time when there's anxiety, but as we see in the record, that's less frequent than - - within normal status. So interacting with others would be generally mild, occasionally moderate." (Id.) As for concentration, task, persistence and pace, as well as adaptation and managing oneself, he opined her limitations were mild. (Tr. at 70-71)

In response to questions from Claimant's attorney, Dr. Wiese testified that these ratings also take into account Claimant's physical impairments, to the extent that she experienced pain and the stress related to that, given that the record supported this, such as exhibit 23F. (Tr. at 71-72)

Vocational Expert ("VE") Testimony:

In response to the ALJ's controlling RFC, *supra*, the VE testified that Claimant could

perform all past relevant work as a teller, a customer service representative, a loan officer, an office manager/recreation manager and an office manager for a medical clinic/administrative clerk. (Tr. at 79)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**Analysis**

<u>Evaluation of Medical Opinion Evidence:</u>

Claimant alleged that the light RFC assessment is erroneous due in large part to the ALJ's treatment of Dr. Weise's opinion/testimony. (ECF No. 10 at 10-15, 16) To the extent that Claimant

argues that the ALJ failed to properly evaluate the opinion evidence of record, the undersigned notes that the ALJ explicitly applied the regulatory framework pursuant to Section 404.1520c to claims filed after March 27, 2017. (Tr. at 25) Additionally, it is known that the RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R. § 404.1546(c); see Felton-Miller v. Astrue, 459 F. App'x 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). The applicable Regulations provide that a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at § 404.1513(a)(5).

In this case, the ALJ properly applied Section 404.1520c, which emphasize the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record; moreover, an adjudicator is not bound to give any specific weight or deference to any medical provider's opinion, including those provided by treating sources. Id. § 404.1520c(a). Instead of assigning weight to medical opinions, the ALJ now just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). Id. Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. § 404.1520c(b)(2). When discussing the finding about whether an opinion is persuasive, the ALJ need only explain how she considered the "the most important factors" of supportability and consistency. Id. § 404.1520c(c). The ALJ "may"

comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id. § 404.1520c(b)(2)-(3).

In this case, the ALJ recognized Dr. Weise is an independent medical expert, and provided testimony regarding Claimant's mental health impairments. (Tr. at 23) It was noted that Dr. Weise opined that Claimant's anxiety became severe in the latter part of the record, although he characterized it as "borderline" and "circumstantial and contextual." (Id.) The ALJ noted further that Dr. Weise described Claimant's anxiety as "persistent", but "not about everything." (Id.) Importantly, the ALJ acknowledged Dr. Weise determined Claimant's functional impairments caused mild to moderate limitations. (Id.) The ALJ then found

> While mild limitations in functioning are supported by the record, Dr. Weise's opinion of moderate limitations is not persuasive, as the evidence indicates that while the claimant has had some bad days when she is very emotional and endorsed many symptoms of depression, other notes indicated improvement in mood. The claimant has denied problems with sleep and appetite and reported coping well with change.

(Tr. at 23, 981-1000)[3]

Regarding Ms. Robinson's assessment, while the ALJ did not explicitly mention her by name, or determine its persuasiveness under the pertinent Regulations, she did make references to her report when discussing the evidence related to the four broad areas of mental functioning. For instance, in the area of interacting with others, the ALJ noted Claimant did not report any specific limitations in this area in her application for benefits, but Claimant did report that she continues to maintain relationships with others, including her husband. (Tr. at 23, 437-444, 732-737)[4]

---

[3] The ALJ cited Dr. Sammeta's office treatment records from the Southern West Virginia Clinic, dated April 21, 2020 to August 4, 2020.

[4] The ALJ referred to Claimant's Function Report dated May 25, 2019 as well as Ms. Robinson's psychological evaluation report dated April 23, 2019.

Ultimately, the ALJ found Claimant had only a mild limitation in this area. In the area of concentrating, persisting, or maintaining pace, the ALJ again found Claimant had only a mild limitation, noting that the evidence showed Claimant remains capable of handling her own finances (Tr. at 23, 437-444)[5], and that while her concentration at times had been assessed as decreased (Tr. at 23, 943-963)[6], it had more routinely been considered within normal limits (Tr. at 23, 732-737, 778-894[7], 943-963, 981-1000).

The ALJ also considered the opinions provided by the state agency consultants, finding they were not persuasive because not only they did not have a chance to review all of the medical evidence contained in the record, but also, they did not adequately consider the combined effect of Claimant's impairments. (Tr. at 27, 126-137, 140-153) Additionally, the ALJ considered the prior ALJ decision, noting it was an unfavorable decision issued on September 5, 2018. (Tr. at 27, 112-125) The ALJ noted further that in the prior decision, Claimant had alleged an onset date beginning December 14, 2014, however, Claimant had continued to engage in substantial gainful activity since then. (Id.) Although the ALJ acknowledged that Claimant's alleged onset date in the current application is dated one day after the unfavorable decision, the ALJ found the prior decision persuasive. (Id.)

As an initial matter, regarding Dr. Wiese's opinion, Claimant asserted he testified that her generalized anxiety was present with occasional panic symptoms which equaled Listing 12.06C as early as February 2019 (ECF No. 10 at 5, citing Tr. at 67). From the transcript of the administrative hearing, Dr. Wiese testified: "We do see the presence also of the generalized anxiety

---

[5] The ALJ again referenced Claimant's Functional Report from May 2019.
[6] Here, the ALJ cited Dr. Sammeta's treatment records dated September 24, 2019 through April 21, 2020.
[7] In addition to the other exhibits of record, *supra*, the ALJ also cited treatment notes from Blue Ridge Pain Management Associates, dated August 12, 2015 through June 26, 2019.

with occasional panic symptoms. I think those equal listing under the C criteria, because as early as February of 2019 we see - - we do see severe anxiety. But there's occasional improvement in that." (Tr. at 67) However, later in his testimony, Dr. Wiese reviewed the medical records, noting that on April 23, 2019, "the majority of the symptoms are identified are improved"; a record dated April 30, 2019 indicated "borderline, but there are a lot of reports where the mental status is within normal limits"; a record dated October 3, 2018 "is within normal limits"; anxiety and depression were denied on January 20, 2019 and February 12, 2020; a record dated November 15, 2019 indicated "within normal limits"; a record dated January 31, 2020 indicated "anxiety is worse"; and a record dated January 21, 2020 "is consistent with the pandemic" (Tr. at 68-69). Ultimately, Dr. Wiese opined that from these records, "it's unlikely that it would be consistent enough to meet even a C criteria." (Tr. at 69) In sum, Dr. Wiese did not determined Claimant's mental impairments met Listing criteria, therefore, to that extent, Claimant's argument lacks merit. In any event, it is clear that the ALJ considered Dr. Wiese's testimony, and compared it to the medical and other evidence of record; the ALJ provided citations to the record that supported her determination that his opinion, specifically to the extent he opined Claimant had moderate limitations, was not persuasive in compliance with the Regulations. In short, the ALJ adequately explained how she evaluated this opinion evidence.

Regarding Ms. Robinson's report, while it is arguable that it can even be considered a "medical opinion" pursuant to the definition of same under the pertinent Regulations, *supra*, despite Claimant's contention, the ALJ is simply not obligated to evaluate her report: "[w]e will not defer or give any specific evidentiary weight . . . to any medical opinion(s)[.]" See 20 C.F.R. § 404.1520c(a). Notwithstanding the application of this Section, the undersigned is hard-pressed

to find how Ms. Robinson's report, given its predominately normal findings, furthers Claimant's overall argument.

Determining Severe Impairment:

Claimant also conclusively argues that the ALJ erred by finding her mental impairments nonsevere.

A "severe" impairment is one "which significantly limits your physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1520(c); see also Id. § 404.1521(a). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." Id. § 404.1521(b). The Regulations provide examples of these activities: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, coworkers and usual work situations; and (6) dealing with changes in a routine work setting. Id. Contrariwise, an impairment may be considered " 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

As noted *supra*, the ALJ reviewed the record of evidence and found Claimant had only mild limitations in interacting with others and concentrating, persisting or maintaining pace. In the other two broad areas of mental functioning, the ALJ also found Claimant had only mild limitations: in understanding, remembering or applying information, she noted Claimant has no difficulty with personal care needs, she does not need reminders, she is capable of preparing her

own meals and caring for her household chores, and she remains capable of driving a vehicle. (Tr. at 23, 437-444) Regarding adapting or managing oneself, the ALJ again noted Claimant has no problem with personal care needs, maintains her own finances and her household, and significantly, she observed Claimant has no specified cognitive limitation. (Id.) Ultimately, the ALJ determined that because Claimant's alleged mental impairments caused no more than mild limitations in all four functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation on her ability to do basic work activities, they are nonsevere. (Tr. at 23) Moreover, the ALJ explicitly stated that Claimant's impairments, including the nonsevere ones, were taken into account in assessing Claimant's RFC. (Tr. at 22)

Although Claimant states the ALJ "also provided a flawed credibility determination" (ECF No. 10 at 1), she provides no further argument or explains how the ALJ erred on this ground. To that extent, Claimant has essentially waived this challenge on appeal. Erline Co. S.A. v. Johnson, 440 F.3d 647, 653 n.7 (4th Cir. 2006) (a "[c]onclusory remark is insufficient to raise on appeal any merits-based challenge"); accord Sedghi v. PatchLink Corp., 440 F. App'x 165, 167 (4th Cir. 2011) ("By advancing only a conclusory argument, Sedghi has likely waived the issue."). Nevertheless, it is noted that in her RFC finding, the ALJ expressly stated that she considered all Claimant's symptoms and the extent to which her symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (Tr. at 25) Absent any evidence to the contrary, a reviewing court must take the ALJ's findings at her word. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).

Although Claimant advocates for an alternate decision, such are matters that involve resolving the conflicting evidence of record, which is an evidentiary finding within the purview of

the ALJ. In short, though Claimant may disagree with the ALJ's determination that she could perform her past relevant work, this Court cannot re-weigh this conflicting evidence or substitute its judgment for the Commissioner's. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also, SSR 96-8p, 1996 WL 3741784, at *7.

In short, the ALJ's narrative of the record included the objective medical evidence and other evidence of record, including Claimant's own statements and testimony; the ALJ's thorough discussion of all this evidence, and her ultimate determination that Claimant remained capable of performing her past relevant work during the relevant period provided sufficient explanation allowing for meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). This Court is not "left to guess about how the ALJ arrived at his conclusions" therefore remand is not necessary. Id. at 637.

Accordingly, the undersigned **FINDS** that the ALJ's evaluation of the opinion evidence, the findings regarding Claimant's mental impairments at step two in the sequential evaluation process, the ALJ's analysis of the evidence of record, and the final decision denying Claimant's application for benefits are supported by the substantial evidence.

## <u>Recommendations for Disposition</u>

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for remand (ECF No. 10), **GRANT** the Defendant's request to affirm the decision below (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: November 10, 2021.



Omar J. Aboulhosn
United States Magistrate Judge